IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**RECEIVED**

AT 8:30 __7/14/04__ M
WILLIAM T WALSH, CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. __04-3331 (HAA)__ |
| | ) |
| 3M COMPANY, | ) |
| AIR PRODUCTS AND CHEMICALS, INC., | )   **CONSENT DECREE** |
| AKZO NOBEL COATINGS, INC., | ) |
| ALTJE, INC., | ) |
| AMERICAN CYANAMID - LEDERLE LABS - | ) |
|     SHULTON, INC., | ) |
| AMERICAN STANDARD COMPANIES, | ) |
| ASHLAND INC., | ) |
| ATOFINA CHEMICALS, INC., | ) |
| BASF CORPORATION, | ) |
| BAYER CHEMICALS CORPORATION, | ) |
| BEE CHEMICAL COMPANY, | ) |
| BENJAMIN MOORE & CO., | ) |
| BER MAR MANUFACTURING CORP., | ) |
| BORDEN CHEMICAL, INC., | ) |
| BRISTOL-MYERS SQUIBB COMPANY, | ) |
| BROWNING-FERRIS INDUSTRIES OF NEW | ) |
|     JERSEY, | ) |
| CHEMCOAT INC., | ) |
| CHEMICAL POLLUTION CONTROL, INC. OF | ) |
|     NY, | ) |
| CIBA SPECIALTY CHEMICALS | ) |
|     CORPORATION, | ) |
| CNA HOLDINGS, INC., | ) |
| CONGOLEUM CORPORATION, | ) |
| CROWN BEVERAGE PACKAGING | ) |
|     COMPANY, INC., | ) |
| CYCLE CHEM, INC., | ) |
| DRI PRINT FOILS, INC., | ) |
| DUPONT COMPANY, | ) |
| EXXON MOBIL CORPORATION, | ) |
| EXXONMOBIL OIL CORPORATION, | ) |
| GENERAL ELECTRIC COMPANY, | ) |
| GENERAL MOTORS CORPORATION, | ) |

HOFFMANN-LA ROCHE, INC.,                           )
HONEYWELL INTERNATIONAL, INC.,                     )
ISP ENVIRONMENTAL SERVICES INC.,                   )
JOHN L. ARMITAGE & CO.,                            )
JOHNSON & JOHNSON,                                 )
KIRKER ENTERPRISES, INC.,                          )
L.E. CARPENTER & COMPANY,                          )
LUCENT TECHNOLOGIES INC.,                          )
MACK TRUCKS, INC.,                                 )
MAGID CORP.,                                       )
MALLINCKRODT BAKER, INC.,                          )
MANOR CARE OF AMERICA, INC.,                       )
MANOR CARE HEALTH SERVICES, INC.,                  )
MARISOL, INC.,                                     )
MERCK & CO., INC.,                                 )
MONROE CHEMICAL, INC.,                             )
NEPERA, INC.,                                      )
NEW ENGLAND LAMINATES CO., INC.,                   )
NORTHRUP GRUMMAN SYSTEMS                           )
        CORPORATION,                               )
OCCIDENTAL CHEMICAL CORPORATION,                   )
PAXAR CORPORATION,                                 )
PERMACEL, INC.,                                    )
PFIZER INC.,                                       )
PHARMACIA CORPORATION,                             )
PORTFOLIO ONE, INC.,                               )
REVLON CONSUMER PRODUCTS                           )
        CORPORATION,                               )
ROCHE VITAMINS INC.,                               )
ROHM AND HAAS COMPANY,                             )
SCHENECTADY INTERNATIONAL, INC.,                   )
SEAGRAVE COATINGS CORP. (NJ),                      )
SIEGFRIED (USA), INC.,                             )
SIMON WRECKING COMPANY, INC.,                      )
SMITHKLINE BEECHAM CORPORATION,                    )
TECHNICAL COATINGS CO.,                            )
THE CONTINENTAL GROUP, INC.,                       )
THE DOW CHEMICAL COMPANY,                          )
THE WARNER LAMBERT CO., LLC,                       )
UNION CARBIDE CORPORATION,                         )
UNITED TECHNOLOGIES CORPORATION,                   )
VIACOM INC.,                                       )
                                                   )
                Defendants.                        )
_____       )

## TABLE OF CONTENTS

I. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
III. Parties Bound . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
IV. Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
V. General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
VI. Performance of the Work By Settling Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
VII. Remedy Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
VIII. Quality Assurance, Sampling, and Data Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . 12
IX. Access and Institutional Controls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
X. Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
XI. EPA Approval of Plans and Other Submissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
XII. Project Coordinators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
XIII. Assurance of Ability to Complete Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
XIV. Certification of Completion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
XV. Emergency Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
XVI. Payments for Response Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
XVII. Indemnification and Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
XVIII. Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
XIX. Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
XX. Stipulated Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
XXI. Covenants Not to Sue by Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
XXII. Covenants by Settling Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
XXIII. Effect of Settlement; Contribution Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
XXIV. Access to Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
XXV. Retention of Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
XXVI. De Minimis Settlement Trust Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
XXVII. Notices and Submissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
XXVIII. Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XXIX. Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XXX. Appendices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XXXI. Community Relations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XXXII. Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XXXIII. Lodging and Opportunity for Public Comment . . . . . . . . . . . . . . . . . . . . . . . . . 40
XXXIV. Signatories/Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XXXV. Final Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# I. BACKGROUND

A.      Contemporaneously with the lodging of this Consent Decree, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Scientific Chemical Processing Superfund Site in Carlstadt, Bergen County, New Jersey, together with accrued interest; (2) reimbursement of future costs; and (3) performance of studies and response work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended).

C.      Throughout the late 1960s and 1970s Inmar Associates, Inc. ("Inmar") or its predecessor corporations held title to some or all of the SCP Carlstadt Property. During the 1960s and 1970s Scientific Chemical Processing Inc. ("SCP") and Scientific Chemical Treatment Company, Inc. ("SCTC") operated industrial waste handling, treatment, and disposal enterprises at the Site. During the course of business SCP and SCTC disposed of a wide variety of hazardous substances at the Site, which were allegedly generated by a number of companies, including the Settling Defendants.

D.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, on September 1, 1983, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B.

E.      On September 30, 1985, a group of 108 respondents ("108 Respondents") entered into Administrative Order On Consent No. II-CERCLA-50114 pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606. The September 30, 1985 Order required the 108 Respondents to carry out a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430. On October 23, 1985, EPA issued Administrative Order No. II-CERCLA-60102 to 31 additional respondents ("Additional Respondents") pursuant to Section 106 directing them to participate and cooperate with the 108 Respondents in performing the RI/FS. The 108 Respondents and the Additional Respondents are collectively referred to as the "RI/FS Respondents."

F.      On October 23, 1985, EPA issued Administrative Order No. II-CERCLA-50115 to Inmar directing it, inter alia, to remove and dispose of tanks containing hazardous substances. On May 2, 1988, the U.S. District Court for the District of New Jersey entered a Consent Decree between the United States and Inmar, providing for reimbursement of response costs and payment of civil penalties relating to failure to comply with the October 23, 1985 Administrative Order requiring removal of the tanks.

G.      Based on the findings of the RI/FS, EPA issued a Record of Decision on September 14, 1990, selecting an interim remedy for the fill area at the Site. The interim remedy was designated as Operable Unit 1 ("OU 1"). OU1 included, inter alia, installation of a slurry wall, installation of a shallow groundwater extraction system, off-site disposal of the collected groundwater, and operation and maintenance of the interim remedy.

H.      On September 28, 1990, EPA issued Administrative Order No. II-CERCLA-00116 to 43 respondents ("43 Respondents") pursuant to Section 106 of CERCLA requiring

them to perform the OU1 remedy. The 43 Respondents completed construction of the OU1 remedy in June 1992.

      I.      On June 23, 1997, a group of 70 respondents ("70 Respondents") entered into Administrative Order On Consent No. II-CERCLA-97-0106 pursuant to Section 122(g)(4) of CERCLA, 42 U.S.C. § 9622(g)(4). Under the terms of the June 23, 1997, Order, the 70 Respondents resolved their liability for past and future response costs regarding the Site based on their status as *de minimis* contributors of Waste Material and in exchange for payment of $4,877,194.56 in response costs, including $975,438.91 to the EPA Hazardous Substance Superfund for response costs previously incurred by EPA and $3,901,755.66 to a trust fund maintained under the Order for future work to be performed at the Site.

      J.      From September 1990 to April 2001 the RI/FS Respondents carried out further RI/FS activities to identify alternative remedies for the final fill area remedy. The final fill area remedy was designated as Operable Unit 2 ("OU 2").

      K.      RI/FS activities for OU 2 were completed in April 2001. EPA published notice of the completion of the RI/FS for OU 2 and of the proposed plan for remedial action for OU 2 on August 15, 2001 in a major local newspaper of general circulation. EPA held a public meeting in August 2001. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.

      L.      The decision by EPA on the remedial action to be implemented at the Site for OU 2 is embodied in a Record of Decision executed on August 12, 2002 to which the State gave its concurrence in a letter dated June 28, 2002.

      M.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State on September 30, 2002, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

      N.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior and the National Oceanic and Atmospheric Administration on September 30, 2002, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

      O.      The Settling Defendants do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

      P.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

      Q.      Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a

response action taken or ordered by the President.

    R.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

    NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

    1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants for the purposes of this Consent Decree and the underlying complaint. Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District solely for the purposes of this Consent Decree and the underlying complaint. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

    2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

    3.    Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

    4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

    "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

3

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working Day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next Working Day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 101.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Oversight Costs" shall mean, for purposes of this Consent Decree only, that portion of Future Response Costs that EPA incurs in monitoring and supervising Settling Defendant's performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including but not limited to costs incurred in reviewing plans, reports and other documents submitted pursuant to this Consent Decree, as well as costs incurred in overseeing and verifying Settling Defendant's implementation of the Work; however, Future Oversight Costs do not include, inter alia: the costs incurred by the United States pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls), XV (Emergency Response), and Paragraph 81 of Section XXI (Work Takeover), or the costs incurred by the United States in enforcing the terms of this Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution) and all litigation costs.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 81 of Section XXI. Future Response Costs shall also include all Interim Response Costs.

"Interim Response Costs" shall mean all costs, excluding Future Oversight Costs but including other direct and indirect costs, (a) paid by the United States in connection with the Site between September 4, 2002 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

4

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"New Jersey Department of Environmental Protection" or "NJDEP" shall mean the New Jersey Department of Environmental Protection and any successor departments or agencies of the State.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work.

"Owner" shall mean The Borough of Carlstadt, Bergen County, New Jersey

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through September 3, 2002.

"Performance Standards" shall mean the standards of control and measures of achievement of the goals of the Remedial Action, set forth in the ROD, including, but not limited to, those specified at pages 24 and 30-33 of the ROD and the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to OU 2 of the Site signed on August 12, 2002, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Contractor" shall mean the contractor(s) retained by the Settling Defendants to perform all or any portion of the construction to be undertaken at the Site.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Scientific Chemical Processing Carlstadt Superfund Site Special Account" shall mean the special account established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §9622(b)(3), and this Consent Decree.

"SCP/Carlstadt De Minimis Settlement Trust" shall mean the trust created on or about July 2, 1997 pursuant to EPA's Administrative Order on Consent (Index No. II-CERCLA-97-0106) dated June 23, 1997.

"SCP Carlstadt Property" shall mean the real property designated as Block 124, Lots 1,2,3,4,and 5 on the official assessment map of the Borough of Carlstadt, Bergen County, New Jersey, located at 216 Paterson Plank Road, Carlstadt, New Jersey.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those entities identified in Appendix B hereto.

"Site" shall mean the Scientific Chemical Processing - Carlstadt Superfund Site, encompassing approximately 5.9 acres, located at 216 Paterson Plank Road, Borough of Carlstadt, Bergen County, New Jersey, and depicted generally on the map attached as Appendix C, and any area into which hazardous substances have migrated therefrom.

"State" shall mean the State of New Jersey.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix D to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) "hazardous substances" as defined in N.J.S.A. 58:10-23.11b and N.J.A.C. 7:1E-1.6, 1.7 and Appendix A.

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.     Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of OU2 response actions at the Site by the Settling Defendants, to reimburse specified response costs of the Plaintiff, and to resolve certain claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.     Commitments by Settling Defendants.

   a.     Settling Defendants shall finance and perform the Work in accordance

6

with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree. Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs other than Future Oversight Costs as provided in this Consent Decree.

b.     The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

c.     Nothing in this Consent Decree shall modify, supercede or amend any prior agreements among any of the Settling Defendants as between themselves. Nothing in such prior agreements shall modify, supersede or amend this Consent Decree or any obligation to the United States arising out of this Consent Decree or as set forth in the ROD and the SOW .

7.     Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.     Permits.

a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

### VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

9.     Selection of Supervising Contractor

a.     All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within 30 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and

qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If the sole reason for disapproval by EPA is a deficiency in the contractor's QMP, EPA will state in writing its objections to the QMP as submitted, and the Settling Defendants shall have 40 days to submit a revision to the contractor's QMP for review by EPA. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.       If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.       If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

10.     Remedial Design.

a.       Within 90 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 9, Settling Defendants shall submit to EPA and the State a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree.

b.       The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW.

c.       Upon approval of the Remedial Design Work Plan by EPA, Settling Defendants shall implement the Remedial Design work in accordance with the SOW, ROD, the Remedial Design Work Plan and other plans and schedules developed and approved thereunder.

8

The Settling Defendants shall submit to EPA all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

      d.     The preliminary design submittals shall include, at a minimum, the preliminary design requirements identified in the SOW.

      e.     The pre-final/final design submittals shall include, at a minimum, the pre-final/final design requirements identified in the SOW.

    11.    Remedial Action.

      a.     Within 120 days after the approval of the final design report required under Section VII.C. of the SOW, or such longer period as may be approved by EPA, Settling Defendants shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. The Remedial Action Work Plan shall include plans and schedules for implementation of all remedial action tasks identified in the SOW.

      b.     Upon approval of the Remedial Action Work Plan by EPA, and subsequent to the entry of the Consent Decree, Settling Defendants shall implement the Remedial Action, including all activities required under the Remedial Action Work Plan, in accordance with the SOW, the ROD, the Remedial Action Work Plan, and other plans and schedules developed and approved thereunder. The Settling Defendants shall submit to EPA all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

    12.    The Settling Defendants shall continue to implement the Remedial Action and O&M, in accordance with the SOW, the ROD, and plans and schedules developed and approved thereunder, until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree. Upon approval of the O&M Plan, it shall be incorporated into and become enforceable under this Consent Decree.

    13.    Modification of the SOW or Related Work Plans.

      a.     If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD or to provide for removal of the Hot Spot pursuant to page 31 of the ROD if the Hot

Spot treatment does not meet performance standards for treatment, solidification and containment, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

        b.    For the purposes of this Paragraph 13 and Paragraph 48 only, the "scope of the remedy selected in the ROD" is: (1) air stripping of the Hot Spot area until levels of volatile organic compounds (VOCs) are reduced to whichever is more stringent: 90 percent lower than current levels, the average VOC levels in the Fill Area outside the Hot Spot, or to a level where interference with stabilization will not occur; (2) soil stabilization of the Hot Spot using cement and lime, so that the Hot Spot is solidified to the performance standards specified on page 30 of the ROD as well as performance standards to be developed during the design phase of the remedy; (3) installation of a landfill cap over the entire Fill Area; (4) improvement of the existing, interim groundwater recovery system, which consists of above-ground piping, and recovery wells screened in the Fill Area.; (5) improvement and upgrading of the existing sheet pile wall along Peach Island Creek, which protects the slurry wall along the riparian side of the Fill Area; (6) evaluation of the slurry wall and actions to make slurry wall effective, if needed; (7) implementation of institutional controls to restrict use of the property and otherwise ensure the effectiveness of the remedy; (8) operation and maintenance and long term monitoring; and (9) removal of Hot Spot, as described on pages 19-20 and 31 of the ROD, if EPA determines that the Hot Spot treatment does not meet performance standards for treatment, solidification, and/or containment.

        c.    (1) Except as provided in (2) below, if Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 65 (record review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

        (2) If EPA determines that the Hot Spot treatment does not meet performance standards for treatment, solidification, and/or containment and therefore Hot Spot removal is required in accordance with the ROD at page 31, Settling Defendants shall design and perform the Hot Spot removal.   EPA's determination with respect to Hot Spot removal shall not be subject to dispute resolution, except that the Settling Defendants may seek dispute resolution solely to the Director of the Emergency and Remedial Response Division ("ERRD"), EPA Region II, of an EPA determination that the Hot Spot treatment does not meet one or more of the performance standards for treatment, solidification, and/or containment, in accordance with the procedures set forth in Paragraphs 63, 64, 65.a, and the first sentence of 65.b.  The decision of the ERRD Director with regard to such dispute, shall be final, binding on the Settling Defendants, and not subject to judicial review.   Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants of the ROD's requirement that the Hot Spot shall be removed if the Hot Spot treatment does not meet one or more of the performance standards for treatment, solidification, and/or containment.

        d.    Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.     Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15.     a.      Settling Defendants shall, prior to any off-Site shipment of Waste Material generated as a consequence of the Work, from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Remedial Project Manager of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipment that does not exceed 10 cubic yards so long as the total volume of said shipment added to the total volume of all such shipments made pursuant to this Consent Decree made prior to said shipment will not exceed 10 cubic yards.

(1)     The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 15.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

(a)     Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REMEDY REVIEW

16.     Periodic Review. Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

17.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

11

18.     Opportunity To Comment. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.     Settling Defendants' Obligation To Perform Further Response Actions. If EPA determines that the Remedial Action is not protective of human health and the environment pursuant to Paragraph 17, the Settling Defendants shall undertake such further response actions as EPA determines are necessary. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the Remedial Action is not protective of human health and the environment, and (2) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 65 (record review).

20.     Submissions of Plans. If Settling Defendants are required to perform the further response actions pursuant to Paragraph 19, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

21.     Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any data collection under this Consent Decree, Settling Defendants shall submit to EPA for approval, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW and the NCP. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence as to the validity and results of the analysis, without objection, in any proceeding under this Decree. Settling Defendants shall ensure that EPA and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the approved QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendants may use other analytical methods. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken

pursuant to this Consent Decree participate in an EPA, NJDEP or NJDEP/EPA-equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22. Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA and its authorized representatives. Settling Defendants shall notify EPA not less than 16 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

23. Settling Defendants shall submit to EPA and the State two copies of the results of all validated sampling and analysis, as well as two copies of the results of all other tests or other data, obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise. Upon request from EPA, Settling Defendants shall also submit to EPA unvalidated sampling data.

24. Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

25. If the SCP Carlstadt Property, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the SCP Carlstadt Property, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

        (a)     Monitoring the Work;

        (b)     Verifying any data or information submitted to the United States or the State;

        (c)     Conducting investigations relating to contamination at or near the Site;

        (d)     Obtaining samples;

13

(c)     Assessing the need for, planning, or implementing additional response actions at or near the SCP Carlstadt Property;

(f)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(g)     Implementing the Work pursuant to the conditions set forth in Paragraph 81 of this Consent Decree;

(h)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(i)     Assessing Settling Defendants' compliance with this Consent Decree; and

(j)     Determining whether the SCP Carlstadt Property or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

26.     If the SCP Carlstadt Property, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.     within 60 days of a request by EPA, an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25 of this Consent Decree and/or to provide land/water use restrictions. Such an agreement for the SCP Carlstadt Property through the date of recordation of the deed notice referred to in subparagraph 26(b) has already been obtained in an access easement contained in Appendix E; and

b.     upon completion of the Remedial Action or at such earlier or later time as the United States may approve upon application of the Settling Defendants, execution and recordation of a deed notice for the SCP Carlstadt Property by the Owner with the Office of the County Clerk of Bergen County, New Jersey using substantially the form attached hereto as Appendix F or such other form as the United States may approve upon application of the Settling Defendants ("Deed Notice"). The Deed Notice shall require the Owner, subsequent owners, lessees, and operators to refrain from using the SCP Carlstadt Property, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to, refraining from taking any action that would injure or threaten injury to the integrity of the slurry wall, the sheet pile retaining wall, the collection tanks, wells, piezometers, HDPE liners or other caps. The Deed Notice shall also: (i) grant a right of access to the Settling Defendants, EPA, NJDEP and their representatives for the purpose

14

of conducting any activity relating to the operation and maintenance of engineering controls constructed at the Site and (ii) grant the right to enforce the use restrictions that EPA has determined are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures performed pursuant to this Consent Decree. Prior to recordation and within 45 days of a request by EPA, Settling Defendants shall submit the Deed Notice to EPA for final approval. In accordance with N.J.S.A. 58:10B-13, the Deed Notice shall be filed in the same manner as deeds and other interests in real property in the State of New Jersey.

        c.     within 120 days of a request by EPA, execution and recordation in the Office of the County Clerk of Bergen County, New Jersey, of an easement, running with the land, that grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25 of this Consent Decree and /or to provide land/water use restrictions. The access rights and/or land/water use restrictions shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Within 45 days of request by EPA, Settling Defendants shall submit to EPA for review and approval with respect to such property:

        (a)     A draft easement that is enforceable under the laws of the State of New Jersey, and

        (b)     a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances)

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Office of the County Clerk of Bergen County. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255. As noted in subparagraph 26(a), the Settling Defendants have already obtained the execution and recordation of an access easement for the SCP Carlstadt Property through the date of recordation of the Deed Notice, which is attached as Appendix E.

    27.     For purposes of Paragraph 26 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, deed notices, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance. If (a) any access or land/water use restriction agreements required by Paragraph 26.a of this Consent Decree are not obtained within 45 days of a request by EPA,

(b) any access easements or restrictive easements required by Paragraph 26.c of this Consent Decree are not submitted to EPA in draft form within 45 days of EPA's request, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 26.c. from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree within 45 days of EPA's request for an easement, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 26 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or deed notices or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

29.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

30.     In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA one copy of written monthly progress reports or, following approval of the Remedial Action Report, quarterly O & M reports that comply with the requirements for the written monthly progress reports or quarterly O & M reports as described in the SOW.

31.     The Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report or quarterly O & M report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

32.     Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Remedial Project Manager or in the event that the EPA Remedial Project Manager is unavailable, contact the EPA Region 2 spill line at (732) 548-8730. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

33.     Within 20 days of the onset of such an event, Settling Defendants shall furnish to

16

Plaintiff a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

34. Settling Defendants shall submit 2 copies to EPA and 1 copy to NJDEP of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans, in accordance with the schedules set forth in such plans. Upon request by EPA, Settling Defendants shall submit in electronic form to the extent practicable all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

35. All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants, who may be the Project Coordinator.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

36. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 45 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37. In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 36(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 36(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

38. Resubmission of Plans.

a. Upon receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall, within 45 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 45-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 39 and 40.

b.      Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

39.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

40.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

41.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

42.     Within 20 days of lodging this Consent Decree, Settling Defendants, and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators or Remedial Project Manager and Alternate Project Coordinators if required. If a Project Coordinator or Remedial Project Manager or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator, who may be an employee of the Supervising Contractor, shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

43.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Remedial Project Manager shall

have the authority lawfully vested in a Remedial Project Manager (RPM) by the National
Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Remedial Project Manager shall have
authority, consistent with the National Contingency Plan, to halt any Work required by this
Consent Decree and to take any necessary response action when s/he determines that conditions
at the Site constitute an emergency situation or may present an immediate threat to public health
or welfare or the environment due to release or threatened release of Waste Material.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

44.     Within 30 days of entry of this Consent Decree, Settling Defendants shall
establish and maintain financial security in the amount of $3.5 million ("Guarantee Amount") in
one or more of the following forms:

      a.     A surety bond in the Guarantee Amount guaranteeing performance of the
Work;

      b.     One or more irrevocable letters of credit equaling the Guarantee Amount;

      c.     A trust fund equaling the Guarantee Amount (but not the SCP/Carlstadt
De Minimis Settlement Trust);

      d.     A guarantee to perform the Work by one or more parent corporations or
subsidiaries, or by one or more unrelated corporations that have a substantial business
relationship with at least one of the Settling Defendants;

      e.     A demonstration that one or more of the Settling Defendants satisfy the
requirements of 40 C.F.R. Part 264.143(f). References in 40 C.F.R. Part 264.143(f) to the "sum
of current closure and post-closure costs estimates and the current plugging and abandonment
costs estimates" shall mean $3.5 million for purposes of this Section; or

      f.     Annual 10-K reports for the preceding fiscal year for one or more of the
Settling Defendants that demonstrates, to EPA's satisfaction, that one or more of the Settling
Defendants meets the requirements of 40 C.F.R. § 264.143(f)(1)(i) or (ii). References in 40
C.F.R. Part 264.143(f) to the "sum of current closure and post-closure costs estimates and the
current plugging and abandonment costs estimates" shall mean $3.5 million for purposes of this
Section.

45.     If the Settling Defendants seek to demonstrate the ability to complete the Work
through a guarantee by a third party pursuant to Paragraph 44.d of this Consent Decree, Settling
Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part
264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by
means of the financial test or the corporate guarantee pursuant to Paragraph 44.d or 44.e, they
shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f)
annually, on the anniversary of the Effective Date. If Settling Defendants seek to demonstrate
their ability to complete the Work by means of Paragraph 44.f, they shall submit the most recent
annual 10-K reports on the anniversary of the Effective Date.   In the event that EPA determines
at any time that the financial assurances provided pursuant to this Section are inadequate, Settling
Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and present
to EPA for approval one of the other forms of financial assurance listed in Paragraph 44 of this
Consent Decree. Settling Defendants' inability to demonstrate financial ability to complete the

Work shall not excuse performance of any activities required under this Consent Decree.

46.     If Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 44 above after entry of this Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA. In the event of a dispute, Settling Defendants may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

47.     Settling Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Settling Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

48.     a..     Completion of Construction of the Remedial Action.

In accordance with Section X of the SOW, Settling Defendants shall submit a Remedial Action Report at the conclusion of construction of the Remedial Action, which shall be subject to EPA approval pursuant to Section X.F. of the SOW.

b.     Completion of the Work.

1. Within 90 days after Settling Defendants conclude that all phases of the Work, have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer, with a copy to the State, stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my thorough inquiry of the person or persons who manage the system or those directly responsible for gathering the information, I certify that, to the best of my knowledge and belief, the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after a reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in

accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

2. If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants, after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV. EMERGENCY RESPONSE

49.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 50, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Remedial Project Manager. If the EPA Remedial Project Manager is unavailable, the Settling Defendants shall notify the EPA Region 2 Spill Line at (732) 548-8730.

Settling Defendants shall take such actions in consultation with EPA's Remedial Project Manager or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

50.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

## XVI. PAYMENTS FOR RESPONSE COSTS

51.     Payments for Past Response Costs.

a.      Within 30 days of the Effective Date, Settling Defendants shall pay to EPA $1,149,902, plus Interest from January 7, 2003, through date of payment, in payment for

21

Past Response Costs.  Payment shall be made by Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number 9405669, EPA Site/Spill ID Number 02-65, and DOJ Case Number 90-11-2-495/1. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of New Jersey following lodging of the Consent Decree.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

    b.  At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVII (Notices and Submissions).

    c.  The total amount to be paid by Settling Defendants pursuant to Subparagraph 51.a shall be deposited in the Scientific Chemical Processing Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or transferred by EPA to the EPA Hazardous Substance Superfund.

   52.  Payments for Future Response Costs Other than Future Oversight Costs.

    a.  Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan other than Future Oversight Costs.  On a periodic basis the United States will send Settling Defendants a bill requiring payment that includes a SCORPIOS Report and EPA-prepared cost summary and, if applicable, a Department of Justice-prepared cost summary.  EPA will provide copies of EPA time sheets, EPA travel receipts, contractor vouchers or invoices, including summary of personnel names and hours (where applicable), monthly reports (where applicable), and the scope of budget established between EPA and its contractors (where applicable).  Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment and above-referenced supporting documents, except as otherwise provided in Paragraph 53.  Payment shall be made to EPA by Electronic Funds Transfer ("EFT") to Mellon Bank, Pittsburgh, Pennsylvania, as follows: Settling Defendants shall provide the following information to their bank: (i) Amount of payment; (ii) Title of Mellon Bank Account to receive the payment: EPA; (iii) Account Code for Mellon Bank Account receiving the payment: 9108544; (iv) Mellon Bank ABA Routing Number: 043000261; (v) Name of Settling Defendants; (vi) the case Docket Number, and (viii) Site/Spill Identifier: 02-65.

    b.  At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVII (Notices and Submissions).

    c.  The total amount to be paid by Settling Defendants pursuant to Subparagraph 52.a  shall be deposited in the Scientific Chemical Processing Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or transferred by EPA to the EPA Hazardous Substance Superfund.

   53.  Settling Defendants may contest payment of any Future Response Costs under Paragraph 52  if they determine that the United States has made an accounting error or if they

allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and above-required supporting documents and must be sent to the United States pursuant to Section XXVII (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 52. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of New Jersey and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVII (Notices and Submissions), a copy of the transmittal letter and payment document paying the uncontested Future Response Costs and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 52. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 52; Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for their Future Response Costs.

54.     In the event that the payment required by Subparagraph 51.a are not made within 30 days of the Effective Date or the payments required by Paragraph 52 are not made within 30 days of the Settling Defendants' receipt of the bill and the above-referenced supporting documentation (where applicable), Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of mailing of the bill and above-referenced supporting documentation (where applicable). The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 69. The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraphs 51 and 52.

## XVII. INDEMNIFICATION AND INSURANCE

55.     Settling Defendants' Indemnification of the United States.

a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized

23

representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States.

    b.  The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 55, and shall consult with Settling Defendants prior to settling such claim.

   56.  Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

   57.  No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's approval of the Remedial Action Report required under Section X of the SOW, comprehensive general liability insurance with limits of $5 million dollars, combined single limit, and automobile liability insurance with limits of $1 million dollars, combined single limit, naming the United States as an additional insured. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and, upon written request by EPA, copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or

subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

58.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

59.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's Remedial Project Manager or, in his or her absence, the Chief of the New Jersey Remediation Branch, Emergency and Remedial Response Division, EPA Region 2, within 5 days of when Settling Defendants first knew that the event might cause a delay. Within 10 days thereafter, Settling Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

60.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

61.     If the Settling Defendants elect to invoke the dispute resolution procedures set

25

forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 58 and 59, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

62. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

63. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

64. Statements of Position.

a. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 65 or Paragraph 66.

b. Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 65 or 66. Within 20 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c. If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 65 or 66, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 65 and 66.

65.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position and the Reply, if any, of Settling Defendants to EPA's statement of position, including supporting documentation, exhibits and appendices, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.      The Director of the Emergency and Remedial Response Division, EPA Region 2, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 65.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 65.c and d.

c.      Any administrative decision made by EPA pursuant to Paragraph 65.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on the United States within 20 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion, and Settling Defendants may file a reply to any response filed by EPA. If Settling Defendants file a reply, EPA may file a surreply.

d.      In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Emergency and Remedial Response Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 65.a.

66.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 64, the Director of the Emergency and Remedial Response Division, EPA Region 2, will issue a final decision resolving the dispute. The Emergency and Remedial Response Division Director's decision shall be binding on the Settling Defendants unless, within 20 days of receipt of the decision, the Settling Defendants file with the Court and serve on the EPA a motion for judicial review of the decision setting forth the matter in dispute, the efforts

made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion and Settling Defendants may file a reply to any response filed by EPA. If Settling Defendants file a reply, EPA may file a surreply.

b.      Notwithstanding Paragraph Q of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

67.      The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 75. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

68.      Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 69 and 70 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree. The amount of stipulated penalties specified below is per violation per day for the Settling Defendants collectively, not per violation per day per Settling Defendant. The obligations of the Settling Defendants to pay stipulated penalties, if any, are joint and several.

69.      Stipulated Penalty Amounts - Work/Reports/Miscellaneous.

a.      The following stipulated penalties shall accrue per violation per day for any noncompliance with any requirement identified in Subparagraph 69.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $   500 | 1st through 5th day |
| $ 1,000 | 6th through 15th day |
| $ 3,000 | 16th through 30th day |
| $ 5,000 | 31st through 45th day |

28

$ 7,500                                    46th day and beyond

b.      Compliance Milestones subject to stipulated penalties are as follows:

(1)     Submission of the name of the Project Coordinator to EPA
        pursuant to Section XII (Project Coordinators) of this Consent
        Decree;

(2)     Payment of Past Response Costs and Future Response Costs, and,
        if applicable, Interest, pursuant to Section XVI (Payment for
        Response Costs) of this Consent Decree;

(3)     Payment of Stipulated Penalties pursuant to Section XX
        (Stipulated Penalties) of this Consent Decree;

(4)     Provision of Financial Assurance pursuant to Section XIII
        (Assurance of Ability to Complete Work) of this Consent Decree;

(5)     Compliance with any reporting requirements set forth in Section X
        (Reporting Requirements) of this Consent Decree;

(6)     Notification of the Supervising Contractor pursuant to Paragraph 9
        of this Consent Decree;

(7)     Implementation of the substantive Work activities required in the
        submittals listed in (10)-(13), (15)-(17), and (19) below, and as
        further described in the Remedial Design Work Plan, Remedial
        Action Work Plan, and/or Operation and Maintenance Manual;

(8)     Implementation of any substantive Work activities required by any
        modifications incorporated in the SOW and/or in work plans
        developed pursuant to the SOW in accordance with  Paragraph 13
        of this Consent Decree;

(9)     Implementation of any substantive Work activities in accordance
        with any work plan submitted by Settling Defendants and approved
        by EPA pursuant to Section VII of this Consent Decree;

(10)    Deadlines for submission and, if necessary, revision and
        resubmission of the Remedial Design Work Plan;

(11)    Deadlines for submission and, if necessary, revision and
        resubmission of the Preliminary Remedial Design Report;

(12)    Deadlines for submission and, if necessary, revision and
        resubmission of the Pre-Final Remedial Design Report;

(13)    Deadlines for submission and, if necessary, revision and
        resubmission of the Final Remedial Design Report;

(14)    Award of contract for the Remedial Action pursuant to Section

29

IX.A of the SOW;

(15)    Deadlines for submission and, if necessary, revision and resubmission of the Remedial Action Work Plan;

(16)    Deadlines for Remedial Action, as specified in the approved Remedial Design Report, including both remediation and monitoring work and Remedial Action Work Plan;

(17)    Deadlines for submission and, if necessary, revision and resubmission of the Operations and Maintenance Manual;

(18)    Conducting final inspection and correcting identified deficiencies, if any, pursuant to Section X.C of the SOW;

(19)    Deadlines for submission of a Draft Remedial Action Report and, if required, submission of a Final Remedial Action Report, pursuant to Section X.D-F of the SOW;

(20)    Securing and maintaining institutional controls to restrict the use of property and otherwise ensure effectiveness of the OU2 remedy in accordance with approved plans and schedule.

70.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 81 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Defendants shall be liable for a stipulated penalty in the amount of $1 million.

71.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Emergency and Remedial Response Division, EPA Region 2, under Paragraph 65.b or 66.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

72.    Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

73.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) or by Electronic Funds Transfer. If paid by check, the check should be made payable to "EPA Hazardous Substances Superfund," and shall be mailed to:

U.S. Environmental Protection Agency, Region II
Superfund Accounting
P.O. Box 360188M
Pittsburgh, PA  15251

If paid by Electronic Funds Transfer, the payment shall be made in the same manner as specified in Paragraph 51.a. All payments shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #02/65, the DOJ Case Number 90-11-2-495/1, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter, or notice of Electronic Funds Transfer shall be sent to the United States as provided in Section XXVII (Notices and Submissions).

74.     The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree. However, if EPA performs a portion of the Work pursuant to Paragraph 81, the Settling Defendants shall not be obligated to complete the portion of the work performed by EPA, but instead shall be obligated to reimburse EPA for its costs of completing that portion of the Work, as well as to pay the stipulated penalty specified in Paragraph 70.

75.     Penalties shall continue to accrue as provided in Paragraph 71 during any dispute resolution period, but need not be paid until the following:

        a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 30 days of the agreement or the receipt of EPA's decision or order;

        b.      If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

        c.      If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 30 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

76.     If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made

31

pursuant to Paragraph 73.

77.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

78.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS NOT TO SUE BY PLAINTIFF

79.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraph 80 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA for performance of the Work and for recovery of Past Response Costs and Future Response Costs. These covenants not to sue shall take effect upon the receipt by EPA of the payment required by Paragraph 51.a of Section XVI (Payments for Response Costs). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

80.     General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a.     claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.     liability based upon the Settling Defendants' ownership or operation of the Site, if any, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

d.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.     criminal liability;

f.     liability for violations of federal or state law which occur during or after

32

implementation of the Remedial Action; and

g.      liability, prior to Certification of Completion of the Work, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that are not or cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work Plans);

h.      liability for response actions other than those provided for in the ROD, including, but not limited to, additional operable units at the Site or the final response action;

i.      liability for costs that the United States will incur related to the Site but are not within the definition of Future Response Costs;

j.      liability for costs to be incurred by the Agency for Toxic Substances and Disease Registry related to the Site;

k.      liability for Future Oversight Costs.

81.     Work Takeover In the event EPA determines that Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 65, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

82.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

83.     Covenant Not to Sue. Subject to the reservations in Paragraph 84, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions, and Past and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.      any claims against the United States, including any department, agency or instrumentality of the United States, or the State under CERCLA Sections 107 or 113 related to the Site, or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 91 (waiver of Claim-Splitting Defenses), these

33

covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 80 (b) - (d) or 80 (g) - (j), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

84.     The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

85.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

86.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have including for contribution, against any person that has entered into EPA's Administrative Order on Consent (Index No. II-CERCLA-97-0106), a copy of which is attached as Appendix G, for "matters addressed" as defined in Paragraph 57.a. of that Administrative Order on Consent, except as otherwise provided in paragraph 57.b. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

87.     Except as provided in Paragraph 86 (waiver of claims against *de minimis* parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 86 (waiver of claims against *de minimis* parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

88.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from actions or claims by any person not a signatory to this Consent Decree as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. The "matters addressed" in