04-333/1

a.  The Site is a "facility" as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

b.  Each Respondent is a "person" as that term is defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

c.  Each Respondent is a "potentially responsible party" within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1).

d.  There has been an actual or threatened "release," as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), from the Site.  The actual or threatened "release" caused the incurrence of response costs.

e.  Prompt settlement with the Respondents is practicable and in the public interest within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1).

f.  This Consent Order involves only a minor portion of the response costs at the Site with respect to each Respondent within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1).

g.  The amount of hazardous substances contributed to the Site by each Respondent and the toxic or other hazardous effects of the hazardous substances contributed to the Site by each Respondent are minimal in comparison to other hazardous substances at the Site within the meaning of Section 122(g)(1)(A) of CERCLA, 42 U.S.C. § 9622(g)(1)(A).

## VI.  ORDER

43.  Based upon the administrative record for this Site and the Statement of Facts and Determinations set forth above, and in consideration of the promises and covenants set forth herein, and intending to be legally bound, EPA and Respondents agree, and EPA hereby orders, as follows:

## VII.  PAYMENT

44.  a.  Within thirty (30) days of the effective date of this Consent Order, each Respondent shall remit to EPA the amount for that Respondent as set forth in Appendix C (List of Payment by Each De Minimis Respondent for EPA Past Response Costs) incorporated herein by reference, by certified or cashier's check made payable to "EPA Hazardous Substance Superfund."  Each check shall reference the Site name, the EPA Region and Site ID Number NJD070565403, the name and address of Respondent, and the EPA

Index Number of this Consent Order, and shall be sent to the
following address:

> EPA Region II
> Attn:  Superfund Accounting
> P. O. Box 360188M
> Pittsburgh, Pennsylvania 15251

   b.  Each Respondent shall simultaneously send a copy
of each of its checks to:

> Damaris Urdaz Cristiano
> Assistant Regional Counsel
> Office of Regional Counsel
> U.S. Environmental Protection Agency, Region II
> 290 Broadway
> New York, NY 10007-1866

   45.   a.  Prior to the effective date of this Consent Order,
Respondents shall present for approval to EPA a proposed trust
agreement for the establishment of the SCP Carlstadt De Minimis
Trust Fund ("Trust Fund") to receive the payments to be made
pursuant to this Consent Order as listed in Appendix D (List of
Payment of Each De Minimis Respondent for Future Remedial Action
Costs) and Appendix E (Structured Settlement Terms for Certain
Respondents).  Within ten (10) days of the effective date of this
Consent Order, Respondents shall enter into a trust agreement, in
accordance with terms acceptable to EPA, establishing the Trust Fund
and provide a copy of the executed trust agreement (the "Trust
Agreement") to EPA.  By signing this Consent Order, each Respondent
agrees to execute the trust agreement.

   b.  1.  The Trust Agreement shall confer upon a trustee
("Trustee") all powers and authorities necessary to accomplish the
purposes of the Trust.  The person appointed as Trustee shall be
acceptable to EPA.  The Trustee shall act as a fiduciary to invest
and disburse the funds paid into and interest accrued in the Trust
Fund in accordance with this Consent Order and the Trust Agreement.

      2.  The Trust Agreement shall provide that the Trustee
shall submit to the jurisdiction and venue of the United States
District Court for the District of New Jersey in connection with any
litigation arising out of the Trust Agreement.

      3.  The Trust Agreement shall provide that the monies
paid into the Trust Fund shall be held in an account in a federally
insured financial institution which agrees to submit to the
jurisdiction and venue of the United States District Court for the
District of New Jersey in connection with any litigation arising out
of the Trust Agreement.

      4.  The Trust Agreement shall provide that the funds
shall be invested in an account which earns interest at commercially
reasonable rates, and such interest shall be added to the account.

All sums in the account, including interest, shall be used only in accordance with the provisions in subparagraph 45.d. below, and to pay the reasonable and necessary expenses and fees of maintaining the account.

5. The Trust Agreement shall provide that the Trustee shall submit written quarterly financial reports on the Trust Fund to a representative of the Respondents and to EPA.

6. Any risk of loss of monies paid into the Trust Fund shall be borne by the Respondents.

7. The Trust Agreement may not be modified without the written approval of EPA.

8. The Respondents shall maintain the Trust Fund in accordance with the terms of the Trust Agreement unless and until all funds paid into and interest accrued in the Trust Fund have been distributed and the Trust Agreement is terminated in accordance with its terms.

9. All requirements of the Consent Order regarding the Trust Agreement shall be incorporated into the Trust Agreement.

c. Within thirty (30) days of the effective date of this Consent Order, each of the Respondents, except for Environmental Waste Resources, Inc. and Novick Chemical Co., Inc., shall remit to the Trustee for placement in the Trust Fund the amount set forth in Appendix D for that Respondent. Environmental Waste Resources, Inc. and Novick Chemical Co., Inc. shall each make payments in accordance with the terms of Appendix E (Structured Settlement Terms for Certain Respondents), in addition to the payment each is to make pursuant to Paragraph 44. Each Respondent shall send a copy of its check(s) remitted to the Trustee to the EPA Region II SCP Carlstadt Site Attorney at the address set forth in Paragraph 44.b.

d. Monies paid into the Trust Fund shall be distributed as follows:

1. (A) If, within eighteen (18) months after the issuance of the next ROD for the Site or within any time period extension determined by EPA in writing pursuant to subparagraph 45.d.1.(B) below, a Consent Decree is entered by the United States District Court for the District of New Jersey for the performance of the remedial actions selected by EPA in the next ROD by Non De Minimis Cooperating PRPs, the Trustee shall disburse monies accrued in the Trust Fund to the Non De Minimis Cooperating PRPs, subject to the requirements in subparagraph 45.d.1.(C) below.

(B) If EPA determines that good faith negotiations for the entry of a Consent Decree for the performance of the remedial actions selected by EPA in the next ROD by Non De Minimis Cooperating PRPs are ongoing at the end of the eighteen (18) month period referred to in subparagraph 45.d.1.(A) above, EPA may

extend in writing the eighteen (18) month period referred to therein for a period(s) to be specified by EPA in writing. Any determination by EPA regarding whether to extend the eighteen (18) month time period, the duration of any extension(s), or whether good faith negotiations are ongoing shall be in EPA's sole and unreviewable discretion.

(C)   The Trust Agreement shall provide that, prior to any disbursement to the Non De Minimis Cooperating PRPs, (a) the Non De Minimis Cooperating PRPs shall submit a request for reimbursement to the Trustee, with a copy to EPA, certified by a duly authorized officer or agent of the Non De Minimis Cooperating PRPs, which includes a description of the remedial work at the Site performed that is the subject of the request, a cost summary for that work, and a statement that the work was performed in accordance with CERCLA, the NCP, and the Consent Decree, and (b) the Trustee shall obtain EPA's concurrence that the described work was performed by the Non De Minimis Cooperating PRPs in accordance with CERCLA, the NCP, and the Consent Decree and that the cost summary represents the costs of the described work. The Trustee shall not disburse any funds to the Non De Minimis Cooperating PRPs until after the completion of the Remedial Design for the remedial actions selected by EPA in the next ROD. If monies remain in the Trust Fund following the first disbursement, the Trustee shall not disburse the remaining funds to the Non De Minimis Cooperating PRPs until after the completion of the Remedial Construction for the remedial actions selected by EPA in the next ROD.

2.   If a Consent Decree is not entered within eighteen (18) months after the issuance of the next ROD providing for the performance of the remedial actions selected in that ROD by Non De Minimis Cooperating PRPs or within any time period extension(s) determined by EPA in writing pursuant to subparagraph 45.d.1.(B), the Trustee shall pay all monies in the Trust Fund within eighteen (18) months and twenty (20) days of the date of issuance of the next ROD, or within twenty (20) days of the expiration of any time extension(s) determined by EPA in writing pursuant to subparagraph 45.d.1.(B), to the EPA Hazardous Substance Superfund, in accordance with instructions to be provided by EPA, for placement into a Special Account for the Site.

e.   The Trust Fund may not be used to pay any Stipulated Penalties that may be required to be paid pursuant to this Consent Order or any Consent Decree entered into for the performance of remedial actions selected in the next ROD by Non De Minimis Cooperating PRPs and shall not be used to pay attorneys' fees or other litigation costs of the Respondents or any Non De Minimis Cooperating PRPs.

f.   Nothing in the Trust Agreement shall affect the Respondents' responsibility for compliance with this Consent Order. Respondents shall provide EPA with written notice at least ten (10) days in advance of any proposed change in the Trust Agreement or of the trustee. EPA, through its approval of the terms and conditions

of the Trust Agreement, or otherwise, does not guarantee the monetary sufficiency of the Trust Fund or the legal sufficiency of the Trust Agreement.

46. The sum of each Respondent's payments pursuant to Paragraphs 44. and 45.c. above includes an amount for: a) past response costs incurred by EPA at or in connection with the Site; b) projected future response costs to be incurred at or in connection with the Site; and c) a premium to cover risks and uncertainties associated with this settlement, including but not limited to the risk that actual Total Site Response Costs will exceed by up to $100 million the Total Site Response Costs estimate of $100 million upon which Respondents' payments are based, but not including the risk that actual Total Site Response Costs will exceed $200 million.

## VIII.   FAILURE TO MAKE PAYMENT

47. If any Respondent fails to make full payment within the times required by Paragraphs 44. and 45.c., that Respondent shall pay Interest on the unpaid balance. In addition, if any Respondent fails to make full payment as required by Paragraphs 44 and 45.c., the United States may, in addition to any other remedies or sanctions available to EPA, bring an action against that Respondent seeking injunctive relief to compel payment and/or seeking civil penalties under Section 122(1) of CERCLA, 42 U.S.C. § 9622(1), for failure to make timely payment.

## IX.   CERTIFICATION OF RESPONDENTS

48. By signing this Consent Order, each Respondent certifies, individually, to the best of its knowledge and belief, the following:

a. Respondent conducted a thorough, comprehensive, good faith search for documents, and has fully and accurately provided to EPA all information currently in its possession, or in the possession of its officers, directors, employees, contractors, agents, or assigns, that relates in any way to the ownership, operation, or control of the Site, or to the ownership, possession, generation, treatment, transportation, storage, or disposal of any Waste Material(s) at or in connection with the Site;

b. Respondent has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents, or other information relating to its potential liability regarding the Site after notification of potential liability or the filing of a suit against it regarding the Site;

c. Respondent has fully complied with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e);

d.   Respondent has had the opportunity to review information made available by EPA regarding the Site including, where applicable, and without limitation, copies of entries in ledgers maintained by the Site operator, copies of receipts or other written documentation between Respondent and the Site operator, and transcripts of sworn statements by the Site operator or information provided by a transporter;

e.   The amount of Waste Materials containing hazardous substances that Respondent arranged for disposal at the Site, or otherwise contributed to the Site, does not exceed the number of gallons of Waste Materials containing hazardous substances that are listed in Appendix B for the Respondent; and neither the information provided to EPA by Respondent referred to in Paragraph 48.a. or the information made available by EPA to Respondent referred to in Paragraph 48.d. indicates that Respondent arranged for disposal, or otherwise contributed to the Site, an amount of Waste Materials containing hazardous substances that is greater than the number of gallons of Waste Materials containing hazardous substances listed in Appendix B for the Respondent.

f.   Respondent did not arrange for disposal at the Site, or otherwise contribute to the Site, Waste Materials containing hazardous substances that possess more toxic or other hazardous effects than the types of Waste Materials containing hazardous substances identified in Appendix B for the Respondent, in the information provided to EPA by Respondent referred to in Paragraph 48.a., and/or in the information made available by EPA to Respondent referred to in Paragraph 48.d.


## X.   COVENANTS NOT TO SUE BY UNITED STATES

49.   In consideration of the payments that will be made by Respondents pursuant to section VII of this Consent Order, and except as specifically provided in Section XI (Reservation of Rights by United States) the United States covenants not to sue or to take administrative action against any of the Respondents pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606, 9607(a), relating to the Site.  With respect to present and future liability, this covenant not to sue shall take effect for each Respondent upon receipt of that Respondent's payments as required by Section VII of this Consent Order.  With respect to each Respondent, individually, this covenant not to sue is conditioned upon:  a) the satisfactory performance by Respondent of all obligations under this Consent Order, including the complete satisfaction by the Respondent of its payment obligations under this Consent Order; and b) the veracity of the information provided to EPA by Respondent relating to Respondent's involvement with the Site.  These covenants not to sue extend only to Respondents and do not extend to any other person.

## XI.   RESERVATION OF RIGHTS

50.   The covenants not to sue by the United States set forth above in Paragraph 49 do not pertain to any matters other than those expressly specified in Paragraph 49.   The United States reserves, and this Consent Order is without prejudice to, all rights against Respondents with respect to all other matters, including, but not limited to, the following:

a.   liability for failure to meet a requirement of this Consent Order, including claims based on a failure to make the payments required by Section VII of this Consent Order;

b.   liability arising out of any future arrangement for disposal or treatment of a hazardous substance, pollutant or contaminant at the Site after the effective date of this Consent Order;

c.   liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments, relating to the Site; and

d.   criminal liability.

51.   Notwithstanding any other provision in this Consent Order, the United States reserves, and this Consent Order is without prejudice to, the right to institute judicial or administrative proceedings against any individual Respondent seeking to compel that Respondent to perform response actions relating to the Site, and/or to reimburse the United States for additional costs of response, if:

a. information is discovered that indicates that such Respondent no longer qualifies as a de minimis party at the Site because such party contributed Waste Materials containing hazardous substances to the Site in excess of 50,000 gallons or contributed hazardous substances to the Site which are either significantly more toxic or of significantly greater hazardous effect than other hazardous substances at the Site, or both; or

b.   information is discovered that indicates that such Respondent contributed an amount of Waste Materials containing hazardous substances to the Site that exceeds the number of gallons of Waste Materials containing hazardous substances listed in Appendix B for such Respondent by more than 10%.   However, the United States' reservation pursuant to this subparagraph 51.b. is limited to reserving the right to seek, in the event such information is discovered, an additional payment from Respondent that reflects the difference between (A) the amount that would have been payable by Respondent based on the amount of Waste Materials containing hazardous substances that the newly discovered information, in combination with previously known information, indicates Respondent contributed to the Site and (B) the amount actually paid by Respondent based on the amount of Waste Materials containing hazardous substances listed in Appendix B for such Respondent; or

c.  Total Site Response Costs incurred by EPA and/or private parties at or in connection with the Site exceed $200 million.  However, the United States' reservation pursuant to this subparagraph 51.c. is limited to reserving the right to seek, in the event Total Site Response Costs exceed $200 million, an additional payment by each Respondent in an amount equal to the percentage that each Respondent's waste-in allocation listed in Appendix B bears to the total waste-in estimate listed in Appendix B, multiplied by the amount of the Total Site Response Costs in excess of $200 million.

52.  Nothing in this Consent Order is intended as a release or covenant not to sue for any entity not a signatory to this Consent Order, and the United States expressly reserves its rights to sue for any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the United States, including EPA, may have against any person, firm, corporation or other entity not a signatory to this Consent Order. Nothing in this Consent Order shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Order.

## XII.   COVENANTS BY RESPONDENTS

53.  Respondents covenant not to sue and agree not to assert any claims or causes of action against the United States, its agencies, officers, representatives, contractors or employees with respect to the Site or this Consent Order including, but not limited to:

a. any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507), based on CERCLA Sections 106(b)(2), 107, 111, 112, or 113, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claims arising out of response activities at the Site; and

c. any claim against the United States under CERCLA Sections 107 and 113, 42 U.S.C. §§ 9607, 9613, relating to the Site.

54.  Respondents covenant not to sue and agree not to assert any claims or causes of action against each other with regard to the Site pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613.

## XIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

55.  Nothing in this Consent Order shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Order.  The United States and Respondents each expressly reserve any and all rights (including,

but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

56.   In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Respondents shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised in the subsequent proceeding were or should have been brought in the instant action; provided, however, that nothing in this Paragraph affects the enforceability of the covenant not to sue included in Paragraph 49.

57.   a.   The Parties agree that each Respondent is entitled to protection from contribution actions or claims as provided by CERCLA Sections 113(f)(2) and 122(g)(5), 42 U.S.C. §§ 9613(f)(2) and 9622(g)(5), for "matters addressed" in this Consent Order, except as set forth in subparagraph 57.b. below.   The "matters addressed" in this Consent Order, for purposes of the preceding sentence, are the Total Site Response Costs and the response actions for which those costs have been incurred or are to be incurred.   Such protection with respect to each Respondent is conditional upon that Respondent's compliance with the requirements of this Consent Order.

b.   If the Total Site Response Costs exceed $200 million and the Non De Minimis Cooperating PRPs (if any) are incurring response costs in excess of the aforesaid $200 million for the performance of response actions relating to the SCP Carlstadt Site consistent with the National Contingency Plan, such Non De Minimis Cooperating PRPs may seek an additional payment by each Respondent in an amount equal to the percentage that each Respondent's waste-in allocation bears to the total waste-in estimate, multiplied by the amount of the Total Site Response Costs in excess of $200 million incurred by such Non De Minimis Cooperating PRPs; provided that EPA and any such Non De Minimis Cooperating PRPs are not entitled to both recover for the same costs that are a component of Total Site Response Costs in excess of $200 million.

## XIV.   CLAIMS AGAINST THE FUND

58.   Nothing in this Consent Order shall be deemed to constitute preauthorization or approval of a CERCLA claim within the meaning of Sections 111 or 112 of CERCLA, 42 U.S.C. §§ 9611 or 9612, or 40 C.F.R. § 300.700(d).

## XV.   INTEGRATION/APPENDICES

59.   This Consent Order and its appendices constitute the final, complete and exclusive agreement and understanding among the

Parties with respect to the settlement embodied in this Consent Order. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Order. The following appendices are attached to and incorporated into this Consent Order:

"Appendix A" is the List of Respondents.

"Appendix B" is the SCP Carlstadt De Minimis Waste Allocation regarding the Respondents.

"Appendix C" is the List of Payment by Each De Minimis Respondent for EPA Past Response Costs.

"Appendix D" is the List of Payment by Each De Minimis Respondent for Future Remedial Action Costs.

"Appendix E" is the Structured Settlement Terms for Certain Respondents.

## XVI. OPPORTUNITY FOR PUBLIC COMMENT

60. This de minimis Consent Order shall be subject to a 30-day public comment period pursuant to Section 122(i) of CERCLA, 42 U.S.C. § 9622(i). In accordance with Section 122(i)(3) of CERCLA, 42 U.S.C. § 9622(i)(3), EPA may withdraw or withhold its consent to this Consent Order if comments received disclose facts or considerations that indicate that this Consent Order is inappropriate, improper, or inadequate.

## XV. ATTORNEY GENERAL APPROVAL

61. The Attorney General or her designee has approved the settlement embodied in this Consent Order in accordance with Section 122(g)(4) of CERCLA, 42 U.S.C. § 9622(g)(4).

## XVI. EFFECTIVE DATE

62. The effective date of this Consent Order shall be the date upon which EPA issues written notice to Respondents that the public comment period pursuant to Paragraph 60 has closed and that comments received, if any, do not require modification of or EPA withdrawal from this Consent Order.

IT IS SO AGREED AND ORDERED:

U.S. Environmental Protection Agency

By: _____        _____
    JEANNE M. FOX                                                        Date
    Regional Administrator
    U.S. Environmental Protection Agency
    Region II

# APPENDIX A

## LIST OF RESPONDENTS

Akzo Nobel Chemicals, Inc. (Interstab Chemical)
Alcoa (Aluminum Company of America)
Amerace Corporation (The Penetone Company)
American National Can Co.
American Flange & Manufacturing Co.
American Inks & Coatings Corp.
Armco (U.S. Polymeric)
Bowen Engineering, Inc. (Stork Bowen)
CanadianOxy Offshore Production Company (Cities Services Oil Co.)
Capital Magnetics Products
Conestoga Fuel, Inc.
Converters Ink Co., Inc.
CWM Chemical Services Inc. (Recycling Industries)
Duracell Inc. (Mallory Battery)
Environmental Waste Resources, Inc. (Environmental Waste Removal)
Ell Bee Chemical Co.
Engelhard Corp. Specialties
Esselte Pendaflex
Faberge
Fairchild Semiconductor, Inc.
Georgia Pacific Corp. (X-Cel)
Gilbert Spruance Co.
GTE Operations Support Incorporated (GTE Sylvania)
IBM Corporation
Inland Steel Container Company
J.M. Huber Corporation
J. Josephson Inc.
Kewanee Industries, Inc.
Kraft Foods Inc. (General Foods)
Metal Film, Inc.
National Starch & Chemical Co.
Novick Chemical Co. Inc
Olin Corp./Phillip A. Hunt Corp.
Owens-Illinois General, Inc.
Pacquet Oneida, Inc. (Oneida Packaging)
Pharmacia & Upjohn (Upjohn)
Pyrolac Corporation
Quality Chemicals, Inc.
Reynolds Metal Co.
Rheem Manufacturing Company
Ridge Printing Co., Inc.
SCM Corporation
Schering Corporation
Schweizerhall (Chemical Dynamics)
Seton Company
Sequa Corp. (Arrow Group Industries)
Sherwin Williams Company
The Southland Corporation
Stauffer Chemical Co.
Stimpson Company, Inc.

Syntex Beauty Care Inc.
Tenax Finishing Products Co.
Tenneco Polymers Inc. (Tenneco Chemicals Inc)
Troy Chemical Corp.
Uniroyal Chemical Company, Inc.
United States Pipe & Foundry Company, Inc.
W.R. Grace & Co.
Westinghouse Electric Corp.
Whittaker Corp.
X Craft (Cellu-Craft)

**APPENDIX B**

## SCP Carlstadt De Minimis Waste Allocation

| Name of Respondent | Quantity (Gallons) | Waste Characterization |
|---|---|---|
| Akzo Nobel Chemicals, Inc. (Interstab Chemicals) | 8,960 | Waste Solvents |
| Alcoa (Aluminum Company of America) | 21,200 | Waste Solvents, Coolant Wastes |
| Amerace Corp. (The Penetone Co.) | 2,662.5 | Trichloroethylene |
| American National Can Co. | 10,522.5 | Waste Solvents, Mixed Solvents |
| American Flange and Manufacturing Co. | 3,382.5 | Oil Sludges and Oil, Emulsions |
| American Inks & Coatings Corp. | 36,532 | Junk Paint, Flammable Liquids, Dirty Wash Solvent, Mixed Solvents |
| Armco (U.S. Polymeric) | 5,000 | Mixed Solvents |
| Bowen Engineering, Inc. (Stork Bowen) | 19,000 | Paint and Pigment Residues |
| CanadianOxy Offshore Products Company (Cities Services Oil Co.) | 2,300 | Mixed Solvents |
| Capital Magnetics Products | 24,858.5 | Waste Slurry, Scrap Solvents |
| Conestoga Fuel, Inc. | 4,000 | Toluene |
| Converters Ink Co., Inc. | 20,775 | Liquid Waste Solvents, Waste Inks |
| CWM Chemical Services Inc. (Recycling Industries) | 41,200 | Waste Solvents |
| Duracell Inc. (Mallory Battery) | 4,000 | Mixed Solvents-Cleaning Agents |
| Environmental Waste Resources, Inc. (Environmental Waste Removal) | 3,210 | Chlorinated Residues, Ester, Alcohol, Ether, Ketone, Heavy Metal Residue, Organic and Heavy Metal Residue Mixture, Flammable Waste, Solvents |
| Ell Bee Chemical Co. | 11,260 | Mixed Isopropanol, Hexane and Water, Ester, Alcohol, Ether, Ketone and Glycol Residue |

| Engelhard Corp. Specialties | 1,375 | Solvent Mixtures |
|---|---|---|
| Esselte Pendaflex | 4,000 | Liquid Mixed Solvents |
| Faberge | 520 | Cosmetic Manufacturing Waste |
| Fairchild Semiconductor, Inc. | 4,000 | Waste Solvents, Industrial Wastes |
| Georgia Pacific Corp. (X-Cel) | 9,500 | Ethers, Ketones, Oil (Non PCB)  and Plasticizer |
| Gilbert Spruance Co. | 9,461 | Paint and Pigment Residues, Mixed Solvents |
| GTE Operations Support Incorporated (GTE Sylvania) | 41,105 | Waste Solvents |
| IBM Corporation | 9,722 | Solvents |
| Inland Steel Container Company | 13,436 | Paint Sludge, Solvents |
| J.M. Huber Corporation | 2,100 | Mixture of Latex Residue, Oil and Oil Sludges, Emulsions, Paint and Pigment Residues |
| J. Josephson Inc. | 16,340 | Paint and Pigment Residues, Mixed Solvents |
| Kewanee Industries, Inc. | 42,460.60 | Waste Solvents, Inorganic Salts |
| Kraft Foods Inc. (General Foods) | 48,294 | Solvents |
| Metal Film, Inc. | 2,310 | MEK, Thinner |
| National Starch & Chemical Co. | 40,000 | Ethyl Acetate |
| Novick Chemical Co. Inc. | 12,430 | Spent Solvents, Waste Oil |
| Olin Corp./Phillip A. Hunt Corp. | 23,345 | Oil and Oil Sludges, Emulsions, Solvents |
| Owens-Illinois General, Inc. | 1,380 | Mixed Solvents |
| Pacquet Oneida Inc. (Oneida Packaging) | 4,200 | Paint and Pigment Residues |
| Pharmacia & Upjohn (Upjohn) | 4,000 | Aqueous Waste:  1% Sodium Cyanide |
| Pyrolac Corporation | 41,000 | Paint with Mixed Solvents |
| Quality Chemicals, Inc. | 10,600 | Mixed Solvents |

| | | |
|---|---|---|
| Reynolds Metal Co. | 12,400 | Waste Oil and Water, Mixed Solvents, and Mixed Solvents and Oil |
| Rheem Manufacturing Company | 21,780 | Paint and Pigment Residues |
| Ridge Printing Co., Inc. | 15,950 | Mixed Solvents |
| SCM Corporation | 4,100 | Sludge |
| Schering Corporation | 9,600 | Spent Ethyl Acetate |
| Schweizerhall (Chemical Dynamics) | 1,483 | Mixed Solvents |
| Seton Company | 4,400 | Dirty Solvents: Toluene, Methyl Ethyl Ketone, Methyl Isobutyl Ketone |
| Sequa Corp. (Arrow Group Industries) | 9,550 | Waste Paint Thinner |
| Sherwin Williams Company | 33,820 | Paint and Pigment Residues |
| The Southland Corp. | 2,500 | Waste Solvents |
| Stauffer Chemical Co. | 24,000 | Weak Phosphoric Acid Slurry |
| Stimpson Company, Inc. | 4,000 | Sludge |
| Syntex Beauty Care Inc. | 2,530 | Mixed Solvents |
| Tenax Finishing Products Co. | 21,388 | Solvents |
| Tenneco Polymers Inc. (Tenneco Chemicals Inc) | 14,250 | Mixed Solvents, Dimethyl Formamide |
| Troy Chemical Corp. | 4,500 | Solvents |
| Uniroyal Chemical Company, Inc. | 5,000 | Chlorinated Hydrocarbon Waste |
| United States Pipe & Foundry Co., Inc. | 5,000 | Asphalt Cutback Waste |
| W.R. Grace & Co. | 400 | Off-Specification Sealing Products: Toluene, Hexane and/or Isoheptane |
| Westinghouse Electric Corp. | 495 | Ferric Chloride and Lacquer Thinner |
| Whittaker Corp Corp. | 14,500 | Waste Water Solvent Residues |
| X Craft (Cellu-Craft) | 8,580 | 0.00 |

SCP Carlstadt Site total waste-in estimate: 25,186,510 gallons

# APPENDIX C

## LIST OF PAYMENT BY EACH DE MINIMIS REPSONDENT
## FOR EPA PAST RESPONSE COSTS

| Name of Respondent | Amount |
|---|---|
| Akzo Nobel Chemicals, Inc. (Interstab Chemicals) | $11,325.44 |
| Alcoa (Aluminum Company of America) | $26,796.80 |
| Amerace Corporation (The Penetone Co.) | $3,365.40 |
| American National Can Co. | $13,300.44 |
| American Flange & Manufacturing Co. | $4,275.48 |
| American Inks & Coatings Corp. | $46,176.45 |
| Armco (U.S. Polymeric) | $6,320.00 |
| Bowen Engineering, Inc. (Stork Bowen) | $24,016.00 |
| CanadianOxy Offshore Products Company (Cities Services Oil Co.) | $2,907.20 |
| Capital Magnetics Products | $31,421.14 |
| Conestoga Fuel, Inc. | $5,056.00 |
| Converters Ink Co., Inc. | $26,259.60 |
| CWM Chemical Services Inc. (Recycling Industries) | $52,076.80 |
| Duracell Inc. (Mallory Battery) | $5,056.00 |
| Environmental Waste Resources, Inc. (Environmental Waste Removal) | $4,057.44 |
| Ell Bee Chemical Co. | $14,232.64 |
| Engelhard Corp. Specialties | $1,738.00 |
| Esselte Pendaflex | $5,056.00 |
| Faberge | $657.28 |
| Fairchild Semiconductor, Inc. | $5,056.00 |
| Georgia Pacific Corp. (X-Cel) | $12,008.00 |
| Gilbert Spruance Co. | $11,958.70 |
| GTE Operations Support Incorporated (GTE Sylvania) | $51,956.72 |

1

## APPENDIX C

## LIST OF PAYMENT BY EACH DE MINIMIS REPSONDENT
## FOR EPA PAST RESPONSE COSTS

| | |
|---|---|
| IBM Corporation | $12,288.61 |
| Inland Steel Container Company | $16,983.10 |
| J.M. Huber Corporation | $2,654.40 |
| J. Josephson Inc. | $20,653.76 |
| Kewanee Industries, Inc. | $53,670.70 |
| Kraft Foods Inc. (General Foods) | $61,043.62 |
| Metal Film, Inc. | $2,919.84 |
| National Starch & Chemical Co. | $50,560.00 |
| Novick Chemical Co. Inc | $15,711.52 |
| Olin Corp./Phillip A. Hunt Corp. | $29,508.08 |
| Owens-Illinois General, Inc. | $1,744.32 |
| Pacquet Oneida Inc. (Oneida Packaging) | $5,308.80 |
| Pharmacia & Upjohn (Upjohn) | $5,056.00 |
| Pyrolac Corporation | $51,824.00 |
| Quality Chemicals, Inc. | $13,398.40 |
| Reynolds Metal Co. | $15,673.60 |
| Rheem Manufacturing Company | $27,529.92 |
| Ridge Printing Co., Inc. | $20,160.80 |
| SCM Corporation | $5,182.40 |
| Schering Corporation | $12,134.40 |
| Schweizerhall (Chemical Dynamics) | $1,874.51 |
| Seton Company | $5,561.60 |
| Sequa Corp. (Arrow Group Industries) | $12,071.20 |
| Sherwin Williams  Company | $42,748.48 |

## APPENDIX C

## LIST OF PAYMENT BY EACH DE MINIMIS REPSONDENT
## FOR EPA PAST RESPONSE COSTS

| | |
|---|---|
| The Southland Corp. | $3,160.00 |
| Stauffer Chemical Co. | $30,336.00 |
| Stimpson | $5,056.00 |
| Syntex Beauty Care, Inc. | $3,197.92 |
| Tenax Finishing Products Co. | $27,034.43 |
| Tenneco Polymers Inc. (Tenneco Chemicals Inc) | $18,012.00 |
| Troy Chemical Corp. | $5,688.00 |
| Uniroyal Chemical Company, Inc. | $6,320.00 |
| United States Pipe & Foundry Company, Inc. | $6,320.00 |
| W.R. Grace & Co. | $505.60 |
| Westinghouse Electric Corp. | $625.68 |
| Whittaker Corp. | $18,328.00 |
| X Craft (Cellu-Craft) | $10,845.12 |

3

## APPENDIX D

### LIST OF PAYMENT BY EACH DE MINIMIS RESPONDENT
### FOR FUTURE REMEDIAL ACTION COSTS

| Name of Respondent | Amount |
|---|---|
| Akzo Nobel Chemicals (Interstab Chemicals) | $45,301.76 |
| Alcoa (Aluminum Company of America) | $107,187.20 |
| Amerace Corporation (The Penetone Company) | $13,461.60 |
| American National Can Co. | $53,201.76 |
| American Flange & Manufacturing Co. | $17,101.92 |
| American Inks & Coatings Corp. | $184,705.79 |
| Armco (U.S. Polymeric) | $25,280.00 |
| Bowen Engineering, Inc. (Stork Bowen) | $96,064.00 |
| CanadianOxy Offshore Products Company (Cities Services Oil Co.) | $11,628.80 |
| Capital Magnetics Products | $125,684.58 |
| Conestoga Fuel, Inc. | $20,224.00 |
| Converters Ink Co., Inc. | $105,038.40 |
| CWM Chemical Services Inc. (Recycling Industries) | $208,307.20 |
| Duracell Inc. (Mallory Battery) | $20,224.00 |
| Environmental Waste Resources, Inc. (Environmental Waste Removal) | Appendix E |
| Ell Bee Chemical Co. | $56,930.56 |
| Engelhard Corp. Specialties | $6,952.00 |
| Esselte Pendaflex | $20,224.00 |
| Faberge | $2,629.12 |
| Fairchild Semiconductor, Inc. | $20,224.00 |
| Georgia Pacific Corp. (X-Cel) | $48,032.00 |

1

## APPENDIX D

### LIST OF PAYMENT BY EACH DE MINIMIS RESPONDENT
### FOR FUTURE REMEDIAL ACTION COSTS

| | |
|---|---|
| Gilbert Spruance Co. | $47,834.82 |
| GTE Operations Support Incorporated (GTE Sylvania) | $207,826.88 |
| IBM Corporation | $49,154.43 |
| Inland Steel Container Company | $67,932.42 |
| J.M. Huber Corporation | $10,617.60 |
| J. Josephson Inc. | $82,615.04 |
| Kewanee Industries, Inc. | $214,682.82 |
| Kraft Foods Inc. (General Foods) | $244,174.46 |
| Metal Film, Inc. | $11,679.36 |
| National Starch & Chemical Co. | $202,240.00 |
| Novick Chemical Co., Inc. | Appendix E |
| Olin Corp./Phillip A. Hunt Corp. | $118,032.32 |
| Owens-Illinois General, Inc. | $6,977.28 |
| Pacquet Oneida (Oneida Packaging) | $21,235.20 |
| Pharmacia & Upjohn (Upjohn) | $20,224.00 |
| Pyrolac | $207,296.00 |
| Quality Chemicals, Inc. | $53,593.60 |
| Reynolds Metal Co. | $62,694.40 |
| Rheem Manufacturing Company | $110,119.68 |
| Ridge Printing Co., Inc. | $80,643.20 |
| SCM Corporation | $20,729.60 |
| Schering Corporation | $48,537.60 |
| Schweizerhall (Chemical Dynamics) | $7,498.05 |
| Seton Company | $22,246.40 |

# APPENDIX D

## LIST OF PAYMENT BY EACH DE MINIMIS RESPONDENT
## FOR FUTURE REMEDIAL ACTION COSTS

| | |
|---|---|
| Sequa Corp. (Arrow Group Industries) | $48,284.80 |
| Sherwin Williams Company | $170,993.92 |
| The Southland Corp. | $12,640.00 |
| Stauffer Chemical Co. | $121,344.00 |
| Stimpson Company, Inc. | $20,224.00 |
| Syntex Beauty Care, Inc. | $12,791.68 |
| Tenax Finishing Products Co. | $108,137.73 |
| Tenneco Polymers Inc. (Tenneco Chemicals Inc) | $72,048.00 |
| Troy Chemical Corp. | $22,752.00 |
| Uniroyal Chemical Company, Inc. | $25,280.00 |
| United States Pipe & Foundry Company, Inc. | $25,280.00 |
| W.R. Grace & Co. | $2,022.40 |
| Westinghouse Electric Corp. | $2,502.72 |
| Whittaker Corp. | $73,312.00 |
| X Craft (Cellu-Craft) | $43,380.48 |

3

# APPENDIX E

## Structured Settlement Terms for Certain Respondents

Pursuant to Paragraph 45.c. of the Consent Order,[1] the following Respondents shall make payments on the schedules and in the amounts set out below:[2]

**Environmental Waste Resources, Inc.:** Environmental Waste Resources, Inc. (EWR) shall pay $16,229.76 plus interest in four quarterly installments within one year and thirty (30) days of the effective date of the Consent Order, as follows: (1) within one hundred twenty (120) days of the effective date of the Consent Order, EWR shall make its first quarterly installment payment of $4,057.44, plus interest accrued thereon; (2) within two hundred ten (210) days of the effective date of the Consent Order, EWR shall make its second quarterly installment payment of $4,057.44, plus interest accrued thereon; (3) within three hundred (300) days of the effective date of the Consent Order, EWR shall make its third quarterly installment payment of $4,057.44, plus interest accrued thereon; and (4) within three hundred ninety five (395) days of the effective date of the Consent Order, EWR shall make its fourth quarterly installment payment of $4,057.44, plus interest accrued thereon. Interest on each installment shall begin to accrue on the thirtieth day after the effective date of the Consent Order and shall accrue on each installment until the date of payment of the installment. EWR shall make each installment payment required under this Appendix E to the Trustee appointed under the trust agreement established pursuant to Paragraph 45. of the Consent Order. EWR shall make such payments without need for a demand or bill.

**Novick Chemical Co., Inc.:** Novick Chemical Co., Inc. ("Novick") shall pay $62,846.08 plus interest in four annual installments within four years and thirty (30) days of the effective date of the Consent Order, as follows: (1) within one year and thirty (30) days of the effective date of the Consent Order, Novick

---

[1] These payments are in addition to the payment each of the above Respondents is required to make pursuant to Paragraph 44. and Appendix C of the Consent Order.

[2] In accordance with 42 U.S.C. § 9607(a), interest, for the purpose of this Appendix E, shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established pursuant to Subchapter A of Chapter 98 of Title 26 of the Internal Revenue Code and shall be compounded on October 1 of each year. The Superfund interest rate changes once each year on October 1. The Fiscal Year 1997 (10-1-96 to 9-30-97) Superfund interest rate is 5.70 percent. The Superfund interest rate for subsequent fiscal years can be obtained from the EPA Region II SCP Carlstadt Site Attorney following the beginning of each applicable federal fiscal year.

shall make its first annual installment payment of
$15,711.52, plus interest accrued thereon; (2) within two years
and thirty (30) days of the effective date of the Consent Order,
Novick shall make its second annual installment payment of
$15,711.52, plus interest accrued thereon; (3) within three years
and thirty (30) days of the effective date of the Consent Order,
Novick shall make its third annual installment payment of
$15,711.52, plus interest accrued thereon, and (4) within four
years and thirty (30) days of the effective date of the Consent
Order, Novick shall make its fourth annual installment payment of
$15,711.52, plus interest accrued thereon.  Interest on each
installment shall begin to accrue on the thirtieth day after the
effective date of the Consent Order and shall accrue on each
installment until the date of payment of the installment.  Unless
and until the trust agreement established pursuant to Paragraph
45. of the Consent Order has been terminated, Novick shall make
each installment payment required under this Appendix E to the
Trustee appointed under the trust agreement established pursuant
to Paragraph 45. of the Consent Order.  If the trust agreement
established pursuant to Paragraph 45. of the Consent Order has
been terminated, Novick shall make any remaining installment
payment(s) required under this Appendix E to (a) the Non De
Minimis Cooperating PRPs,[3] if the Trust Fund monies referenced in
Paragraph 45.d. of the Consent Order were distributed to the Non
De Minimis Cooperating PRPs pursuant to Paragraph 45.d.1. of the
Consent Order or (b) the EPA Hazardous Substance Superfund, if
the Trust Fund monies referenced in Paragraph 45.d. of the
Consent Order were distributed to the EPA Hazardous Substance
Superfund pursuant to Paragraph 45.d.2. of the Consent Order.[4]
Novick shall make such payments without need for a demand or
bill.[5]

---

[3] The term "Non De Minimis Cooperating PRPs" is defined in
Paragraph 7.k. of the Consent Order.

[4] In the event that any such installment payment is made to
the EPA Hazardous Substance Superfund, such amount shall be
placed into a Special Account for the SCP Carlstadt Site.

[5] Prior to making each installment payment, Novick shall
contact the EPA Region II SCP Carlstadt Site Attorney to
ascertain whether the trust agreement has been terminated, and,
if so, to whom and how the payment should be made.

## Scientific Chemical Processing Superfund Site
### *De Minimis* Settlement Responsiveness Summary

Section 122(i) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §9622(i), requires the Environmental Protection Agency ("EPA") to publish in the Federal Register notice of *de minimis* settlements entered into pursuant to Section 122(g) of CERCLA, 42 U.S.C. §9622(g), and, for a 30-day period beginning on the date of publication, to provide an opportunity for persons who are not parties to the proposed settlement to file written comments relating to the proposed settlement. Section 122(i) further requires EPA to consider any comments filed during the 30-day period and permits EPA to withdraw or withhold consent to the proposed settlement if such comments disclose facts or considerations which indicate the proposed settlement is inappropriate, improper, or inadequate.

In accordance with Section 122(i) of CERCLA, on May 12, 1997, EPA published notice in the Federal Register, 62 FR 25947, of a proposed *de minimis* settlement, EPA Docket No. II-CERCLA-97-0106, concerning the Scientific Chemical Processing Superfund Site, Carslstadt, Bergen County, New Jersey. Attached is the comment letter received and EPA's response to those comments. The comments received on this proposed settlement did not disclose facts or considerations which indicate that the proposed settlement is inappropriate, improper, or inadequate. Therefore, pursuant to paragraph 62 of the proposed Administrative Order on Consent, the proposed settlement will be final and effective on the date EPA issues written notice to Respondents that the comments received did not require EPA to modify or withdraw from the Order.


Jeanne Fox
Regional Administrator

6/23/57
Date

ATTACHMENT C

## LIST OF PAYMENT BY EACH DE MINIMIS RESPONDENT
### FOR FUTURE REMEDIAL ACTION COSTS
#### ADMINISTRATIVE ORDER ON CONSENT INDEX NO. II CERCLA 97-0106

| Name of Respondent | Amount |
|---|---|
| AKZO Nobel Chemicals (Interstab Chemicals) | $45,301.76 |
| Alcoa (Aluminum Company of America) | $107,187.20 |
| Amerace (Penetone) | $13,461.60 |
| American National Can Co. | $53,201.76 |
| American Flange & Co. | $17,101.92 |
| American Inks & Coatings | $184,705.79 |
| Armco (U.S. Polymeric) | $25,280.00 |
| Bowen Engineering, Inc. (Stork Bowen) | $96,064.00 |
| Canadian Oxy Offshore Products Company (Cities Services Oil Co.) | $11,628.80 |
| Capital Magnetics | $125,684.58 |
| Conestoga Fuel | $20,224.00 |
| Converters Ink Co. | $105,038.40 |
| CWM Chemical Services Inc. (Recycling Industries) | $208,307.20 |
| Duracell (Mallory Battery) | $20,224.00 |
| Environmental Waste Resources (Environmental Waste Removal) | Fn 1 |
| Ell Bee Chemical Co. | $56,930.56 |
| Engelhard Corp. Specialties | $6,952.00 |
| Esselte Pendaflex | $20,224.00 |
| Faberge | $2,629.12 |
| Fairchild Semiconductor | $20,224.00 |
| Georgia-Pacific (X-Cel) | $48,032.00 |
| Gilbert Spruance | $47,834.82 |
| GTE Operations Support (GTE  Sylvania) | $207,826.88 |
| IBM Corporation | $49,154.43 |
| Inland Steel Container | $67,932.42 |
| J.M. Huber | $10,617.60 |
| J. Josephson Inc. | $82,615.04 |
| Kewanee Industries, Inc. | $119,321.60 |
| Kraft Foods (General Foods) | $244,174.46 |

ATTACHMENT C

| | |
|---|---|
| Metal Film | $11,679.36 |
| National Starch & Chemical Co. | $202,240.00 |
| Novick Chemical., Inc. | Fn 2 |
| Olin Corp./Phillip A. Hunt Corp. | $118,032.32 |
| Owens-Illinois General, Inc. | $6,977.28 |
| Pacquet Oneida (Oneida Packaging) | $21,235.20 |
| Pharmacia & Upjohn (Upjohn) | $20,224.00 |
| Pyrolac | $207,296.00 |
| Quality Chemicals, Inc. | $53,593.60 |
| Reynolds Metal Co. | $62,694.40 |
| Rheem Manufacturing | $110,119.68 |
| Ridge Printing | $80,643.20 |
| SCM | $20,729.60 |
| Schering Corporation | $48,537.60 |
| Schweizerhall (Chemical Dynamics) | $7,498.05 |
| Seton Company | $22,246.40 |
| Sequa Corp. (Arrow Group Industries) | $48,284.80 |
| Sherwin Williams | $170,993.92 |
| The Southland Corp. | $12,640.00 |
| Stauffer Chemical Co. | $121,344.00 |
| Stimpson (E.B. Stimpson) | $20,224.00 |
| Syntex Beauty | $12,791.68 |
| Tenax Finishing Products | $108,137.73 |
| Tenneco Polymers (Tenneco Chemicals Inc.) | $72,048.00 |
| Troy Chemical | $22,752.00 |
| Uniroyal Chemical Company | $25,280.00 |
| United States Pipe & Foundry | $25,280.00 |
| W.R. Grace | $2,022.40 |
| Westinghouse Electric Corp. | $2,502.72 |
| Whittaker Corp. | $73,312.00 |
| X Craft (Cellu-Craft) | $43,380.48 |

1/      $16,229.76 plus interest in four quarterly installments within 1 year and 30 days of the effective date of the Consent Order in accordance with Paragraph 45.c. and Appendix E of the Administrative Order on Consent Index No. II-CERCLA-97-0106.

2/      $62,846.08 plus interest in four annual installments within 4 years and 30 days of the effective date of the Consent Order in accordance with Paragraph 45.c. and Appendix E of the Administrative Order on Consent Index No. II-CERCLA-97-0106.

ATTACHMENT D[1]

### Non-Settling Members of the 216 Paterson Plank Road Cooperating PRP Group Who Have Authorized Disclosure of Their Identity to EPA

1.  American Hoechst/Celanese Corp.

2.  American Standard Incorp.

3.  Armstrong World Industries, Inc.

4.  Ashland Chemicals, Inc.

5.  AT&T

6.  Benjamin Moore & Co.

7.  Ber Mar Manufacturing Corp.

8.  Borden, Inc.

9.  Browning-Ferris Industries

10. CBS, Inc.

11. Chemcoat, Inc.

12. Chemical Pollution Control, Inc.

13. Ciba-Geigy Corp.

14. Continental Can Company

15. Diamond Shamrock/Occidental

16. Dow Chemical Company

17. E.I. DuPont de Nemours

18. E.R. Squibb & Sons

19. GAF Corporation

20. General Electric Co.

21. General Motors

22. Grumman Corporation

23. Hoffman-LaRoche, Inc.



# CorporateTrust &AgencyGroup

### Environmental Escrow Services

## BANKERS TRUST COMPANY

---

### FEE SCHEDULE (Revised) for
### SCIENTIFIC CHEMICAL PROCESSING SITE
### Carlstadt, New Jersey

---

All fees and expenses associated with the administration of the Trust Account shall be payable out of the interest income earned on the Trust Fund. The Trustee's annual compensation shall be paid in accordance with the fee schedule listed below.

In no event, however, may any trust charge made by the Trustee invade the corpus of the Trust Fund.

**Acceptance Fee:**                              **Waived**

**Legal Review Fee:**                            **Waived**

**Annual Administration Fee:**                   **50 basis points (Spread from Treasuries)**

The annual fee covers the ongoing administration of the Trust Account, including maintenance of all account records, production of periodic financial statements, performing functions relating to tax payments and collection and disbursement of funds.

**Transaction Fees:** *(as required)*

| | |
|---|---|
| *Per Outgoing Wire Transfer* | $20 |
| *Per Direct Investment Purchase/Sale* | $40 |
| *Per Mutual Fund Purchase/Sale* | *No charge* |

This revised fee schedule, dated April 3, 1997, supercedes all previous fee schedule revisions.

---

## ▮Bankers Trust Company



## CorporateTrust &AgencyGroup
Environmental Escrow Services

### Description of Services Included:

- Daily investment and reinvestment of cash balances in selected vehicle(s)
- Quarterly PRP Statement indicating all deposits and disbursements allocated by PRP share sent to each Group member
- Pay all authorized invoices by bank check or wire and provide separate disbursement report indicating payee name, date invoice was received/paid and check/wire number
- *For QSF Trusts:  Obtain QSF Tax ID, make quarterly estimated tax payments, prepare and file annual QSF tax return using form 1120SF*

### Assumptions:

- Average estimated cash balance/quarter:                              $3-4 Million
- Average number of disbursements per life of the trust (except quarterly payment of taxes)       1-2
- Number of PRPs:   60
- Legal Structure:   QSF Trust
- Potential collection of funds from non-settlers   No
- Length of Trust Agreement:   ≈ 18 Months

We may place orders to buy/sell financial instruments with outside broker-dealers that we select, as well as BT or its affiliates.  These transactions (for which normal and customary spreads will be earned in addition to the charges quoted above) will be executed on a riskless principal basis solely for your account(s) and without recourse to us or our affiliates.  If you choose to invest in any mutual fund, BT and/or our affiliates may earn service fees/expenses associated with these funds as disclosed in the mutual fund prospectus provided to you, in addition to the charges quoted above.  We will provide periodic mutual fund account statements describing transactions executed for your account(s).  Trade confirms will be available upon your request at no additional charge.

## Bankers Trust Company